JUDGE OETKEN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IT'S A NEW 10, LLC, a Florida Limited Liability Company,<br><br>                Plaintiff,<br><br>v.<br><br>HARMON STORES, INC., a Delaware Corporation and BED, BATH & BEYOND, a New York Corporation<br><br>                Defendants. | **17 CV 4231**<br>____Civ.____<br><br>ECF Case |

**(CONTAINS CONFIDENTIAL INFORMATION
NOT TO BE FILED ON ECF)**

**(REDACTED VERSION TO BE FILED ON ECF)**

## COMPLAINT

Plaintiff It's a New 10, LLC ("Plaintiff" or "It's a New 10"), by and through its undersigned attorneys, hereby alleges and avers as follows:

### The Parties

1. Plaintiff It's a New 10 is a limited liability company organized under the laws of the state of Florida with a principal place of business at 4613 North University Drive, #478 Coral Springs, Florida 33067.

2. Upon information and belief, Defendant Harmon Stores, Inc. ("Harmon Stores") is a Delaware corporation with its principal place of business located at 650 Liberty Avenue, Union, New Jersey 07083. Upon further information and belief, Defendant Harmon Stores is a wholly-

owned subsidiary of Defendant Bed Bath & Beyond, Inc. and has retail stores throughout New York, including in this judicial district, New Jersey and Connecticut.

3. Upon information and belief, Defendant Bed Bath & Beyond Inc. is a New York corporation with its principal place of business located at 650 Liberty Avenue, Union, New Jersey 07083. Upon information and belief, Defendant Bed Bath & Beyond is the parent company of Defendant Harmon Stores Inc. and has retail stores throughout the U.S., including in New York and in this judicial district.

4. Defendant Bed Bath & Beyond has sold the infringing product at issue, which is manufactured and distributed by Defendant Harmon Stores, in Bed Bath & Beyond's stores. Moreover, given Bed Bath & Beyond is the parent company of Defendant Harmon Stores and shares the same office with its wholly-owned subsidiary in Union, New Jersey, Defendant Bed Bath & Beyond is directing and controlling Defendant Harmon Stores' manufacture and distribution of its infringing hair care products. Defendant Bed Bath & Beyond and Defendant Harmons Stores are referred to collectively as "Defendants."

### Jurisdiction and Venue

5. This Court has jurisdiction over the subject matter of this action under Section 39(a) of the Lanham Act, 15 U.S.C. § 1121 and Sections 1331, 1332(a)(1), 1338(a), 1338(b) and 2201 of the Judicial Code, 28 U.S.C. § 1331, 1338(a) and (b), and under principles of pendent jurisdiction. The Court also has supplemental jurisdiction pursuant to the provisions of 28 U.S.C. § 1367.

6. Personal jurisdiction is proper in this district because Defendants have engaged in business activities in, and directed to, this district and are doing business in the State of New York and this judicial district and have intentionally committed a tortious act within this district and/or have committed a tortious act outside of the State of New York causing injury to Plaintiff within this

judicial district. Defendants intentionally directed their infringing activities to the State of New York and this judicial district, sell products, including the infringing products, within the State of New York and in this judicial district, and the exercise of personal jurisdiction would be otherwise constitutionally permissible over Defendants. Upon information and belief, Defendants operate stores in New York, including in this judicial district.

7. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claim occurred in this district, including, *inter alia*, Defendants committed trade dress infringement in this judicial district and sold, advertised and/or promoted its infringing products in this district. Plaintiff conducts a substantial part of its business in this district, and Plaintiff has been injured in this district by Defendants' infringing activities.

**Plaintiff's Trade Dress Rights**

8. Plaintiff It's a New 10 is a nationally recognized leader in the innovation and sale of hair care products. Plaintiff is the owner of the well-known and top-selling It's a 10 Miracle hair care line.

9. Some of Plaintiff's top-selling products in its vast portfolio of professional hair care products are Plaintiff's keratin line of hair products and the Miracle Shine Spray product at issue herein (collectively "It's a 10 Hair Products").

10. Plaintiff promotes and sells It's a 10 Hair Products under its distinctive trade dress as shown below in **Image 1**. Plaintiff's trade dress includes, among other non-functional elements, a distinctive color scheme of a unique shade of blue for the body with an orange cap and dominant circle in the center that is blue, orange and white (hereinafter "**It's a 10 Trade Dress**").

**IMAGE 1**



11. Plaintiff has established long-standing common law rights in the **It's a 10 Trade Dress** as a result of continuous, exclusive and substantial use of the **It's a 10 Trade Dress** in interstate commerce on or in connection with its hair care products since at least as early as 2009.

12. Plaintiff has spent over           to date on the advertising and promotion of the It's a 10 hair care line and has invested an immeasurable amount of time and effort in the development of its unique brand and product line.

13. As a result of Plaintiff's considerable promotional efforts, it has achieved huge commercial success both in the United States and abroad and the **It's a 10 Trade Dress** is widely recognized by consumers as indicating the source of Plaintiff's hair care products.

14. Plaintiff's sales of its products under the It's a 10 hair care line have exceeded           since 2006. Sales of It's a 10 Hair Products have exceeded

4

15. Plaintiff's It's a 10 hair care line, including the It's a 10 Hair Products at issue, have earned substantial recognition among professional salons and consumers as a high-quality product, receiving glowing reviews not only from consumers, but celebrities alike.

16. The It's a 10 Hair Products have also generated substantial attention and praise in various famous publications, including, but not limited to: *Cosmopolitan, Fitness Magazine, Good Housekeeping, In Style, In Touch, Ladies' Home Journal, Life & Style, Latina Magazine, Lucky Magazine, Martha Stewart Wedding Magazine, OK! Magazine, People Magazine, Redbook, SELF Magazine, Seventeen, Star Magazine, Teen Vogue,* and *US Magazine.*

17. The It's a 10 hair care line was the exclusive hair product for the Miami Heat (*i.e.*, a professional basketball team based in Miami), further enhancing the popularity of this already successful hair care line.

18. The It's a 10 hair care line has also won numerous awards, including *Total Beauty Award* 2013, *Cosmopolitan Beauty Award* 2012, *New Beauty Choice Award* 2012, *Parent Mom Knows Best Beauty Award* 2011, *Life & Style the Best of Beauty* 2011, *Teen Vogue Beauty Award*, *OK Magazine Spring Beauty Award* and the *Destination and Honeymoon Beauty Award.*

19. Most recently, Plaintiff promoted its It's a 10 haircare line, including the It's a 10 Hair Products at issue herein, by broadcasting a promotional commercial for the It's a 10 haircare line during the live 2017 Super Bowl.

20. As a result of these substantial promotional efforts and sales, It's a 10's Trade Dress has significance in the minds of distributors, the members of the trade, and with relevant consumers as denoting goods coming from, affiliated with or sponsored by Plaintiff.

21. The It's a 10's Trade Dress, and the goodwill associated therewith, are of inestimable value to Plaintiff.

**Defendants' Infringing Acts**

22.     Long subsequent to Plaintiff's ownership, use and adoption of the **It's a 10 Trade Dress**, Defendants intentionally adopted and began use of a confusingly similar trade dress for <u>identical</u> goods, namely, *a hair care leave-in treatment plus keratin* ("Infringing Product"). See **Image 2** below.

**IMAGE 2**

| **It's a New 10's Products** | **Defendants' Infringing Product** |

  

23.     Defendants' Infringing Product utilizes the same orange top and unique shade of blue for the body as well as prominent circle in the center of the front panel of the bottle that is orange, white and blue, which is virtually identical to the **It's a 10 Trade Dress**. The text on the front of Defendants' Infringing Product is virtually identical to the text on Plaintiff's It's a 10 Hair Products. The respective parties' products both use the term "leave-in" in small lower case white font with the term "plus" and "with" directly below "leave in" in an orange color and the term

KERATIN is used in the same size, font, color (white), placement and in all upper case on the front of the bottle.

24.     Defendants' Infringing Product bears, in a small *inconspicuous* font placed on the back most lower portion of its Infringing Product, a notice stating that Defendants' Infringing Product is not manufactured by Plaintiff as shown in **Image 3** below with the red arrow identifying this inconspicuous notice.



**IMAGE 3**



25.     Defendants' Infringing Product is not only sold in the *same* stores as Plaintiff's It's a 10 Hair Products, but Defendant's Infringing Product is sold directly next to and in between Plaintiff's It's a 10 Hair Products. As but one example, Defendant's Infringing Product was found at Defendant Bed Bath & Beyond in Florida being sold directly next to It's a New 10's **Miracle**

7


**Leave in Plus Keratin** (as shown in **Image 1** above) on the left side of Defendant's Infringing Product and It's a New 10's **Miracle Shine Spray** (as shown in **Image 1** above) directly on the right.

26. Defendants' Infringing Product was also sold on the shelf at Bed Bath & Beyond with a hang tag that prominently stated "INSTANT TEN LEAVE IN SPRAY KERATIN" in order to create an affiliation with Plaintiff's IT'S A 10 MIRACLE LEAVE IN PLUS KERATIN.

27. Indeed, the parties' respective products are sold in the same channels of trade and are placed directly next to each other on the shelves of the store in an effort to confuse consumer into believing that Defendants' Infringing Product is a part of the It's a 10 hair care line.

28. Plaintiff's counsel also found Defendants' Infringing Product for sale at The Christmas Tree Shops at Riverhead, New York. Upon information and belief, The Christmas Tree Shop is also a subsidiary of Defendant Bed Bath & Beyond.

29. Defendants use their infringing trade dress in connection with goods that are identical to Plaintiff's It's a 10 Hair Products. Plaintiff helped launch the first products into the hair market that consumers could "leave in" without washing the product out. Plaintiff further launched a special line of leave in hair products with keratin, which is a protein that is believed to protect the hair from damage. Defendants' Infringing Product is a hair care product that is a *leave in conditioner with keratin*—identical to Plaintiffs' hair products.

30. Defendants' infringing trade dress has caused and is likely to continue to cause confusion, including initial-interest confusion, point-of-sale confusion and post-sale confusion, and to deceive consumers as to whether there is an affiliation, connection or association between Plaintiff and Defendants' Infringing Products.

31. Plaintiff is suffering irreparable injury to its valuable trade dress rights and no adequate remedy at law. Defendants' conduct has caused and, if allowed to continue, will continue to

cause irreparable damage to Plaintiff's business, reputation and goodwill. Plaintiff's damages are not yet ascertained.

32.   The foregoing acts of infringement have been and continue to be deliberate, willful and wanton, constituting an exceptional case within the meaning of 15 U.S.C. § 1117.

<div style="text-align:center">

**COUNT I**
**Trade Dress Infringement**
**(15 U.S.C. § 1125(a))**

</div>

33.   Plaintiff repeats and re-alleges all of the allegations contained in the preceding paragraphs as if fully set forth herein.

34.   Plaintiff's **It's a 10 Trade Dress** is inherently distinctive, nonfunctional and has acquired secondary meaning in the market place.

35.   Defendants, without authorization from Plaintiff, have promoted, distributed, sold and/or offered for sale products that use a trade dress that is confusingly similar to Plaintiff's **It's a 10 Trade Dress**.

36.   On information and belief, the foregoing acts of Defendants were willful and Defendants intended to cause, have caused and are likely to continue to cause confusion, mistake, and deception among consumers, the public and the trade who recognize and associate Plaintiff's **It's It's a 10 Trade Dress** with Plaintiff, all in violation of 15 U.S.C 1125 (a).

37.   The foregoing illegal acts of Defendants have caused irreparable injury to Plaintiff and will continue to cause irreparable injury to Plaintiff's business and goodwill. Plaintiff is also entitled to damages under 15 U.S.C. 1117.

## COUNT II
## Common Law Trade Dress Infringement

38. Plaintiff repeats, re-alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as if fully set forth herein.

39. Defendants' use in commerce of its infringing trade dress in order to profit off the goodwill and reputation associated with Plaintiff's It's a New 10 was intended to cause, and is likely to continue to cause confusion, mistake and deception among consumers as to whether Defendants' Infringing Product is affiliated with, sponsored or approved by Plaintiff.

40. As a direct and proximate result of Defendants' infringement, Plaintiff has suffered, and will continue to suffer, irreparable injury and monetary loss to its business. Plaintiff is entitled to damages.

## COUNT III
## False Designation of Origin and False Advertising
## (15 U.S.C. §1125(a))

41. Plaintiff repeats, re-alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as if fully set forth herein.

42. Plaintiff's **It's a 10 Trade Dress** is distinctive, has been used throughout the United States and elsewhere, and is well known to distributors in the trade and consumers as an indicator of source of Plaintiff's hair products. The trade and relevant consumers associate and identify Plaintiff's **It's a 10 Trade Dress** with Plaintiff.

43. Defendants' promotion, distribution, sale, and offering for sale of Defendants' Infringing Product, which uses a confusingly similar trade dress, constitutes false designation of origin or sponsorship of such goods and is likely to confuse, mislead, and deceive consumers and other purchasers, and members of the public as to the origin of the goods or to cause said persons to believe that the goods have been sponsored, approved, authorized or licensed by Plaintiff or are in

some way affiliated with Plaintiff, all in violation of 15 U.S.C. § 1125(a). Plaintiff has suffered and will continue to suffer irreparable injury and is also entitled to damages under 15 U.S.C. 1117.

## COUNT IV
### Violation of New York Anti-Dilution Statute
### (N.Y. Gen. Bus. Law §§ 360-l)

44. Plaintiff repeats, re-alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as if fully set forth herein.

45. Defendants' sale of Defendants' Infringing Product constitutes dilution by blurring in violation of The New York Anti-Dilution Statute (Gen. Bus. Law 360-l) as such sale is likely to dilute the distinctive quality of Plaintiff's **It's a 10 Trade Dress**.

46. As an actual and proximate result of Defendants' deceptive activities, Plaintiff has been irreparably harmed and is entitled to injunctive relief.

## COUNT V
### Unfair Competition Under Common Law of New York

47. Plaintiff repeats, re-alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as if fully set forth herein.

48. Defendants intended to profit off the goodwill associated with Plaintiff's **It's a 10 Trade Dress** through the use of it trade dress which is confusingly similar to Plaintiff's **It's a 10 Trade Dress**. Defendants acted in bad faith and intended to deceive consumers as to the origin of Defendants' goods and to mislead customers into believing that Defendants' goods have been sponsored, approved, authorized or licensed by Plaintiff or are in some way affiliated or connected with Plaintiff.

49. Defendants' actions constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce in contravention of New York law.

11

50. As an actual and proximate result of Defendants' deceptive activities, Plaintiff has suffered and will continue to suffer irreparable harm and has also been damaged in an amount according to proof at the time of trial, and shall be entitled to damages, costs and attorney fees in addition thereto.

### COUNT VI
### Unjust Enrichment

51. Plaintiff repeats, re-alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as if fully set forth herein.

52. Defendants intentionally used, and continues to use, a trade dress that is confusingly similar to Plaintiff's **It's a 10 Trade Dress** in order to divert consumers to Defendants' Infringing Product and to profit off the goodwill associated with Plaintiff's **It's a 10 Trade Dress**.

53. As a result of Defendants' infringing activities, a monetary benefit has been conferred upon Defendants. Defendants voluntarily realized and retained such benefit.

54. Defendants have been unjustly enriched at Plaintiff's expense, and the present circumstances as well as principles of equity are such that it would be inequitable to allow Defendants to retain such monetary benefits without requiring the Defendants to make restitution to Plaintiff for damages related thereto.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands as follows:

1. Defendants, their agents, subsidiaries, servants, employees, attorneys, representatives, successors and assigns and all persons, firms, or corporations in active concert or participation with Defendant be enjoined and restrained preliminarily and permanently from:

    (a) directly or indirectly infringing Plaintiff's **It's a 10 Trade Dress** in any manner, including, but not limited to distributing, advertising, selling, or offering

      Defendants' products using their infringing trade dress, including but not limited to, Defendants' Infringing Products;

  (b)  engaging in any conduct that is likely to confuse, mislead, or deceive consumers to believe that Defendants or Defendants' Infringing Products are sponsored, approved, licensed or in any way connected or affiliated with Plaintiff; and

  (c)  otherwise competing unfairly with Plaintiff in any manner.

2. Defendants be required to deliver for destruction to Plaintiff's counsel all goods in its possession or under its control, including Defendants' Infringing Product, and any promotional and advertising material related thereto, and any other unauthorized items which infringe Plaintiff's **It's a 10 Trade Dress**.

3. Defendants be required to account for and to pay to Plaintiff all of Defendants' profits and all of Plaintiff's damages resulting from Defendants' foregoing infringing and unfair activities;

4. Plaintiff recover from Defendants its costs of this action, reasonable attorneys' fees, and prejudgment and post-judgment interest;

5. Plaintiff recover from Defendants punitive damages;

6. Plaintiff be awarded damages under 15 U.S.C. 1117 and enhanced damages under 15 U.S.C. 1117 for willful infringement;

7. Plaintiff be awarded its actual damages caused by Defendants' unlawful conduct; and

8. Plaintiff be entitled to any and all further relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable to a jury.

Dated: June 5, 2017

Respectfully submitted,

/Edward P. Kelly/
Edward P. Kelly
Merry L. Biggerstaff
Tiajoloff & Kelly LLP
The Chrysler Building, 37th floor
405 Lexington Avenue
New York, New York 10174
212 490 3285
212 490 3295 (fax)